WYMAN, PARTRIDGE & CO. v. BOSTON BLACKING CO.

(Circuit Court, D. Maine. December 16, 1909.)

No. 88.

1. EXPLOSIVES (§ 7*)—PACKING DANGEROUS ARTICLES—STATUTES.
      No civil suit can be maintained in consequence of violation of Rev. St. §§ 4475, 4476 (U. S. Comp. St. 1901, p. 3052), without a proper and specific pleading of facts which show negligence or willful tort.
      [Ed. Note.—For other cases, see Explosives, Dec. Dig. § 7.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. EXPLOSIVES (§ 7*)—STATE STATUTES—APPLICATION.

Where defendant packed and shipped certain volatile and inflammable material from a point in the state of Massachusetts to an ultimate destination outside the state, without complying with state statutes regulating the packing and shipping of such material and creating a remedy for injuries sustained thereby, it was not material to plaintiff's right to enforce such remedy that the injury occurred in another state.

[Ed. Note.—For other cases, see Explosives, Dec. Dig. § 7.*]

At Law.   Action by Wyman, Partridge & Co. against the Boston Blacking Company.   On demurrer to the declaration, except the first four counts thereof.   Demurrer sustained as to the fifth and sixth counts, and overruled as to the others.

Following are the counts objected to:

Count V. For that defendant, on or about August 12, 1907, and for a long time prior thereto, was engaged in preparing and putting up for sale in the city of Chelsea and commonwealth of Massachusetts and in selling what said defendant called "shoe wax," "liquid cement," and "Currier's blacking"; that on or about said August 12, 1907, the defendant delivered to the Boston & Maine Railroad Company, a common carrier, at its freight house in said city of Chelsea, for transportation by it, 72 barrels, 2 half barrels, and 6 kegs, consigned by the defendant to the "A. B. B. Company, St. Paul, Minnesota," and at the same time delivered to said railroad a memorandum purporting to describe the contents of said barrels, kegs, and half barrels, and asking that the shipment be sent by the Boston & Maine Railroad Company, the West Shore Railway Company, the West Transit Company, and the C., St. Paul, M. & O., knowing that the transportation of said barrels, kegs, and half barrels, with their contents, over the route requested, would involve transferring or transshipment from one carrier to another, and from a land carrier to a water carrier, or vice versa; that by said memorandum the contents of 12 of the barrels were described as "shoe wax," the contents of 51 of the barrels as "liquid cement," and the contents of the remaining 9 barrels, the 6 kegs, and the 2 half barrels as "Currier's blacking"; that the contents of said barrels, kegs, or half barrels had been packed and put up for shipment by the defendant, and, as the defendant well knew, consisted of camphene, naphtha, benzine, benzole, coal oil, refined petroleum, or other articles of like character, and, as the defendant well knew, were highly volatile, inflammable, and liable to explode, and highly dangerous to life and property, and if allowed to escape from the vessels in which they were contained were extremely likely to cause damage to life or property by fire or explosion; that although the defendant had mixed with such camphene, naphtha, benzine, benzole, coal oil, refined petroleum, or other like articles, a small percentage of some other substance, such mixture did not really or essentially change the nature of said camphene or other such article, nor remove or lessen its dangerous properties; that in spite of these facts the defendant wholly failed distinctly to mark on the outside with the name or description of the articles contained therein, the barrels, kegs, and half barrels aforesaid, in violation of the statutes of the United States of America; that there was nothing on or about said barrels, kegs, and half barrels to indicate the true and dangerous nature of their contents, and that said Boston & Maine Railroad, and all other carriers or persons engaged in the transportation or handling of said barrels, kegs, and half barrels, were wholly without any knowledge of the true and dangerous nature of the contents; that the Boston & Maine Railroad Company, after receiving the aforesaid barrels, kegs, and half barrels, forwarded them, with their said contents, in pursuance of the aforesaid memorandum, by the route requested; that on or about August 17, 1907, while said goods were in the course of transportation along said route, and were at or near Buffalo, New York, and being transferred to the steamship Utica in the ordinary and proper manner of transferring and handling goods of a nondangerous character, but without such extra precautions as would have been taken in the case of goods known to be

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dangerous, those engaged in so transferring being without any knowledge of the dangerous nature of the contents of the said barrels, kegs, and half barrels, one of the said barrels, kegs or half barrels became broken, without any negligence on the part of those engaged in transferring or handling the same, or on the part of any other person, and the contents of said barrel, keg, or half barrel escaped into the hold of said steamship Utica; that said contents immediately turned in whole or in part to vapor and shortly thereafter exploded with great force and became on fire; that said fire spread with great rapidity; that the plaintiff, a corporation duly organized and existing under the laws of the state of Minnesota, was the owner of certain goods, commonly known as "dry goods," properly packed and contained in four wooden boxes or cases then rightfully on board the steamship Utica, and stored therein in a proper place, the said goods having been bought by the plaintiff in New York City and being in process of transportation to it at its place of business in Minneapolis, Minnesota; that said goods were consumed by the fire aforesaid and wholly lost to the plaintiff; that said loss was caused by the defendant's failure as aforesaid to mark and give notice of the dangerous nature of the goods shipped by them as required by the statutes of the United States of America, and occurred, further, without the fault, lack of care, or negligent intervention or omission of the plaintiff. All to the great damage of the plaintiff.

Count VI. For that defendant, on or about August 12, 1907, and for a long time prior thereto, was engaged in preparing and putting up for sale in the city of Chelsea and commonwealth of Massachusetts and in selling what said defendant called "shoe wax," "liquid cement," and "Currier's blacking"; that on or about said August 12, 1907, the defendant delivered to the Boston & Maine Railroad Company, a common carrier, at its freight house in said city of Chelsea, for transportation by it, 72 barrels, 2 half barrels, and 6 kegs, consigned by the defendant to the "A. B. B. Company, St. Paul, Minnesota," and at the same time delivered to said railroad a memorandum purporting to describe the contents of said barrels, kegs, and half barrels, and asking that the shipment be sent by the Boston & Maine Railroad Company, the West Shore Railway Company, the West Transit Company, and the C., St. Paul, M. & O., knowing that the transportation of said barrels, kegs, and half barrels, with their contents, over the route requested, would involve transferring or transshipment from one carrier to another, and from a land carrier to a water carrier, or vice versa; that by said memorandum the contents of 12 of the barrels were described as "shoe wax," the contents of 51 of the barrels as "liquid cement," and the contents of the remaining 9 barrels, the 6 kegs, and the 2 half barrels as "Currier's blacking"; that the contents of said barrels, kegs, or half barrels had been packed and put up for shipment by the defendant, and, as the defendant well knew, consisted of camphene, naphtha, benzine, benzole, coal oil, refined petroleum, or other articles of like character, and, as the defendant well knew, were highly volatile, inflammable, and liable to explode, and highly dangerous to life and property, and if allowed to escape from the vessels in which they were contained were extremely likely to cause damage to life or property by fire or explosion; that although the defendant had mixed with such camphene, naphtha, benzine, benzole, coal oil, refined petroleum, or other like articles, a small percentage of some other substance, such mixture did not really or essentially change the nature of said camphene or other such article, nor remove or lessen its dangerous properties; that in spite of these facts the defendant wholly failed distinctly to mark on the outside with the name or description of the articles contained therein, the barrels, kegs, and half barrels aforesaid, in violation of the statutes of the United States of America; that there was nothing on or about said barrels, kegs, and half barrels to indicate the true and dangerous nature of their contents, and that said Boston & Maine Railroad, and all other carriers or persons engaged in the transportation or handling of said barrels, kegs, and half barrels, were wholly without any knowledge of the true and dangerous nature of the contents; that the Boston & Maine Railroad Company, after receiving the aforesaid barrels, kegs, and half barrels, forwarded them, with their said contents, in pursuance of the aforesaid memorandum, by the route requested; that on or about August 17, 1907, while said goods were in the course of transporta-

tion along said route, and were at or near Buffalo, New York, and being transferred to the steamship Utica in the ordinary manner of transferring and handling goods of a nondangerous character, but without such extra precautions as would have been taken in the case of goods known to be dangerous, those engaged in so transferring being without any knowledge of the dangerous nature of the contents of the said barrels, kegs, and half barrels, one of the said barrels, kegs, or half barrels became broken, and the contents of said barrel, keg, or half barrel escaped into the hold of said steamship Utica; that said contents immediately turned in whole or in part to vapor, and shortly thereafter exploded with great force and became on fire; that said fire spread with great rapidity; that the plaintiff, a corporation duly organized and existing under the laws of the state of Minnesota, was the owner of certain goods, commonly known as "dry goods," properly packed and contained in four wooden boxes or cases then rightfully on board the steamship Utica, and stored therein in a proper place, the said goods having been bought by the plaintiff in New York City and being in process of transportation to it at its place of business in Minneapolis, Minnesota; that said goods were consumed by the fire aforesaid and wholly lost to the plaintiff; that said loss was caused by the defendant's failure as aforesaid to mark and give notice of the dangerous nature of the goods shipped by them as required by the statutes of the United States of America, and occurred, further, without the fault, lack of care, or negligent intervention or omission of the plaintiff. All to the great damage of the plaintiff.

Count VII. For that defendant, on or about August 12, 1907, and for a long time prior thereto, was engaged in preparing and putting up for sale in the city of Chelsea and commonwealth of Massachusetts and in selling what said defendant called "shoe wax," "liquid cement," and "Currier's blacking"; that on or about said August 12, 1907, the defendant delivered to the Boston & Maine Railroad Company, a common carrier, at its freight house in said city of Chelsea, for transportation by it, 72 barrels, 2 half barrels, and 6 kegs, consigned by the defendant to the "A. B. B. Company, St. Paul, Minnesota," and at the same time delivered to said railroad a memorandum purporting to describe the contents of said barrels, kegs, and half barrels, and asking that the shipment be sent by the Boston & Maine Railroad Company, the West Shore Railway Company, the West Transit Company, and the C., St. Paul, M. & O., knowing that the transportation of said barrels, kegs, and half barrels, with their contents, over the route requested, would involve transferring or transshipment from one carrier to another, and from a land carrier to a water carrier, or vice versa; that by said memorandum the contents of 12 of the barrels were described as "shoe wax," the contents of 51 of the barrels as "liquid cement," and the contents of the remaining 9 barrels, the 6 kegs, and the 2 half barrels as "Curriers blacking"; that the contents of said barrels, kegs, or half barrels had been packed and put up for shipment by the defendant, and, as the defendant well knew, consisted of camphene, naphtha, benzine, benzole, coal oil, refined petroleum, or other articles of like character, and, as the defendant well knew, were highly volatile, inflammable, and liable to explode, and highly dangerous to life and property, and if allowed to escape from the vessels in which they were contained were extremely likely to cause damage to life or property by fire or explosion; that although the defendant had mixed with such camphene, naphtha, benzine, benzole, coal oil, refined petroleum, or other like articles, a small percentage of some other substance, such mixture did not really or essentially change the nature of said camphene or other such article, nor remove or lessen its dangerous properties; but nevertheless the defendant willfully or negligently failed to pack or put up for shipment said goods in a secure manner as required by the statutes of the United States of America, willfully or negligently failed to procure and use for the shipment of said dangerous substances stout and well-constructed coverings, barrels, or other receptacles, willfully or negligently failed to take proper precautions against the breaking of said barrels, kegs, and half barrels and the escape of their contents in the ordinary course of transportation, and willfully or negligently failed, in packing said goods for shipment, to take the precautions which it was its duty to take in view of the highly dangerous nature of said goods, or properly to guard against the consequences likely to result from

a fall of one of said barrels. kegs, or half barrels while being transferred or transshipped in transit, which it was defendant's duty to anticipate and guard against; that there was nothing on or about said barrels, kegs, or half barrels to indicate the dangerous nature of their contents, and the Boston & Maine Railroad, and all other carriers or persons engaged in the transportation or handling of said barrels. kegs, and half barrels. with their contents. were wholly without any knowledge of the dangerous nature of said contents; that the Boston & Maine Railroad Company, after receiving the aforesaid barrels, kegs, and half barrels, forwarded them, with their said contents, in pursuance of the aforesaid memorandum, by the said route requested; that on or about August 17, 1907, while said goods were in the course of transportation along said route and were at or near Buffalo, New York, and being transferred to the steamship Utica in the ordinary and proper manner of transferring and handling goods of a nondangerous character, those engaged in so transferring being without any knowledge of the dangerous nature of the contents of said barrels, kegs, and half barrels, one of the said barrels. kegs, or half barrels, without any negligence on the part of those engaged in transferring or handling the same, or on the part of any other person, fell into the hold of said steamer, and in consequence of the said failure of the defendant to pack the goods shipped as aforesaid in accordance with the requirements of the statutes of the United States of America the barrel became broken, and the contents of said barrel, keg. or half barrel escaped into the hold of said steamship Utica; that said contents immediately turned in whole or in part to vapor, and shortly thereafter exploded with great force and became on fire; that said fire spread with great rapidity; that the plaintiff, a corporation duly organized and existing under the laws of the state of Minnesota, was the owner of certain goods. commonly known as "dry goods," properly packed and contained in four wooden boxes or cases then rightfully on board the steamship Utica, and stored therein in a proper place, the said goods having been bought by the plaintiff in New York City and being in process of transportation to it at its place of business in Minneapolis, Minnesota; that said goods were consumed by the fire aforesaid, and wholly lost to the plaintiff; that said loss was caused by the defendant's willful or negligent failure as aforesaid to pack or put up said goods for shipment securely in the manner required by the statutes of the United States of America, and occurred, further, without the fault, lack of care, or negligent intervention or omission of the plaintiff. All to the great damage of the plaintiff.

Count VIII. For that defendant, on or about August 12, 1907, and for a long time prior thereto, was engaged in preparing and putting up for sale in the city of Chelsea and commonwealth of Massachusetts and in selling what said defendant called "shoe wax," "liquid cement," and "Currier's blacking"; that on about said August 12, 1907, the defendant delivered to the Boston & Maine Railroad Company. a common carrier, at its freight house in said city of Chelsea, for transportation by it, 72 barrels. 2 half barrels. and 6 kegs, consigned by the defendant to the "A. B. B. Company, St. Paul, Minnesota," and at the same time delivered to said railroad a memorandum purporting to describe the contents of said barrels, kegs, and half barrels, and asking that the shipment be sent by the Boston & Maine Railroad Company, the West Shore Railway Company, the West Transit Company, and the C., St. Paul. M. & O., knowing that the transportation of said barrels, kegs, and half barrels, with their contents, over the route requested, would involve transferring or transshipment from one carrier to another, and from a land carrier to a water carrier, or vice versa; that by said memorandum the contents of 12 of the barrels were described as "shoe wax," the contents of 51 of the barrels as "liquid cement," and the contents of the remaining 9 barrels. the 6 kegs, and the 2 half barrels as "Currier's blacking"; that the contents of said barrels. kegs, or half barrels had been packed and put up for shipment by the defendant, and, as the defendant well knew, consisted of camphene, naphtha, benzine, benzole, coal oil, refined petroleum. or other articles of like character, and, as the defendant well knew, were highly volatile, inflammable, and liable to explode, and highly dangerous to life and property, and if allowed to escape from the vessels in which they were contained were extremely likely to cause damage to life or property by fire or explosion; that although the

defendant had mixed with such camphene, naphtha, benzine, benzole, coal oil, refined petroleum, or other like articles, a small percentage of some other substance, such mixture did not really or essentially change the nature of said camphene or other such article, nor remove or lessen its dangerous properties; but nevertheless the defendant willfully or negligently failed to pack or put up for shipment said goods in a secure manner as required by the statutes of the United States of America, willfully or negligently failed to procure and use for the shipment of said dangerous substances stout and well-constructed coverings, barrels, or other receptacles, willfully or negligently failed to take proper precautions against the breaking of said barrels, kegs, and half barrels, and the escape of their contents in the ordinary course of transportation, and willfully or negligently failed in packing said goods for shipment to take the precautions which it was its duty to take in view of the highly dangerous nature of said goods, or properly to guard against the consequences likely to result from a fall of one of said barrels, kegs, or half barrels while being transferred or transshipped in transit, which it was defendant's duty to anticipate and guard against; that there was nothing on or about said barrels, kegs, or half barrels to indicate the dangerous nature of their contents, and the Boston & Maine Railroad, and all the other carriers or persons engaged in the transportation or handling of said barrels, kegs, and half barrels, with their contents, were wholly without any knowledge of the dangerous nature of said contents; that the Boston & Maine Railroad Company, after receiving the aforesaid barrels, kegs, and half barrels, forwarded them, with their said contents, in pursuance of the aforesaid memorandum, by the said route requested; that on or about August 17, 1907, while said goods were in the course of transportation along said route, and were at or near Buffalo, New York, and being transferred to the steamship Utica in the ordinary manner of transferring and handling goods of a nondangerous character, those engaged in so transferring being without any knowledge of the dangerous nature of the contents of said barrels, kegs, and half barrels, one of the said barrels, kegs, or half barrels fell into the hold of said steamer, and in consequence of the said failure of the defendant to pack the goods shipped as aforesaid in accordance with the requirements of the statutes of the United States of America the barrel became broken, and the contents of said barrel, keg, or half barrel escaped into the hold of said steamship Utica; that said contents immediately turned in whole or in part to vapor, and shortly thereafter exploded with great force and became on fire; that said fire spread with great rapidity; that the plaintiff, a corporation duly organized and existing under the laws of the state of Minnesota, was the owner of certain goods, commonly known as "dry goods," properly packed and contained in four wooden boxes or cases then rightfully on board the steamship Utica, and stored therein in a proper place, the said goods having been bought by the plaintiff in New York City and being in process of transportation to it at its place of business in Minneapolis, Minnesota : that said goods were consumed by the fire aforesaid and wholly lost to the plaintiff; that said loss was caused by the defendant's willful or negligent failure as aforesaid to pack or put up said goods for shipment securely in the manner required by the statutes of the United States of America, and occurred, further, without the fault, lack of care, or negligent intervention or omission of the plaintiff. All to the great damage of the plaintiff.

Count IX. For that defendant, on or about August 12, 1907, and for a long time prior thereto, was engaged in preparing and putting up for sale in the city of Chelsea and commonwealth of Massachusetts and in selling what said defendant called "shoe wax," "liquid cement," and "Currier's blacking"; that on or about said August 12, 1907, the defendant delivered to the Boston & Maine Railroad Company, a common carrier, at its freight house in said city of Chelsea, for transportation by it, 72 barrels, 2 half barrels, and 6 kegs, consigned by the defendant to the "A. B. B. Company, St. Paul, Minnesota," and at the same time delivered to said railroad a memorandum purporting to describe the contents of said barrels, kegs, and half barrels, and asking that the shipment be sent by the Boston & Maine Railroad Company, the West Shore Railway Company, the West Transit Company, and the C., St. Paul, M. & O., knowing that the transportation of said barrels, kegs, and half barrels,

with their contents, over the route requested, would involve transferring or transshipment from one carrier to another, and from a land carrier to a water carrier, or vice versa; that by said memorandum the contents of 12 of the barrels were described as "shoe wax," the contents of 51 of the barrels as "liquid cement," and the contents of the remaining 9 barrels, the 6 kegs, and the 2 half barrels as "Currier's blacking"; that the contents of said barrels, kegs, and half barrels, described as aforesaid, had prior to the delivery to said Boston & Maine Railroad Company, been put up and prepared for sale, and had been sold or offered for sale by the defendant, not for remanufacture, and, as the defendant well knew, consisted of illuminating or fuel oils, made from coal or petroleum, which would evaporate a gas under 100° Fahrenheit, or ignite at a temperture of less than 110° Fahrenheit, with which oils the defendant had mixed a very small percentage of other substances, but not so as really or essentially to change the character or properties of said oils; that in so selling or offering for sale illuminating or fuel oils made from coal or petroleum, which would evaporate a gas under 100° Fahrenheit or ignite at a temperature of less than 110° Fahrenheit, the defendant acted in violation of the statutes of the commonwealth of Massachusetts, and became liable for any damage suffered by any person from the explosion or ignition of such oils thus unlawfully sold or kept or offered for sale; that there was nothing on or about said barrels, kegs, or half barrels to indicate the true nature of their contents, and that said Boston & Maine Railroad, and all other carriers or persons engaged in the transportation of said barrels, kegs, and half barrels, were wholly without any knowledge of the dangerous nature of the contents of the same: that the Boston & Maine Railroad Company, after receiving the aforesaid barrels, kegs, and half barrels, forwarded them, with their said contents, in pursuance of the aforesaid memorandum, by the route requested; that on or about August 17, 1907, while said goods were in the course of transportation along said route, and were at or near Buffalo, New York, and being transferred to the steamship Utica in the ordinary and proper manner of transferring and handling goods of a nondangerous character, those engaged in so transferring being without any knowledge of the dangerous nature of the contents of the said barrels. kegs, and half barrels, one of the said barrels, kegs, or half barrels became broken, without any negligence on the part of those engaged in transferring or handling the same, or on the part of any other person, and the contents of said barrel, keg, or half barrel escaped into the hold of said steamship Utica; that said contents immediately turned in whole or in part to vapor and shortly thereafter exploded with great force and became on fire; that said fire spread with great rapidity; that the plaintiff, a corporation duly organized and existing under the laws of the state of Minnesota, was the owner of certain goods, commonly known as "dry goods," properly packed and contained in four wooden boxes or cases then rightfully on board the steamship Utica, and stored therein in a proper place, the said goods having been bought by the plaintiff in New York City and being in process of transportation to at its place of business in Minneapolis, Minnesota; that said goods were consumed by the fire aforesaid and wholly lost to the plaintiff; that said loss was suffered by the plaintiff from the explosion or ignition of said illuminating or fuel oil unlawfully sold or kept or offered for sale as aforesaid, in violation of the statutes of the commonwealth of Massachusetts, and occurred, further, without the fault, lack of care, or negligent intervention or omission of the plaintiff. All to the great damage of the plaintiff.

Count X. For that defendant, on or about August 12, 1907, and for a long time prior thereto, was engaged in preparing and putting up for sale in the city of Chelsea and commonwealth of Massachusetts and in selling what said defendant called "shoe wax," "liquid cement," and "Currier's blacking"; that on or about said August 12, 1907, the defendant delivered to the Boston & Maine Railroad Company a common carrier at its freight house in said city of Chelsea for transportation by it, 72 barrels, 2 half barrels, and 6 kegs, consigned by the defendant to the "A. B. B. Company, St. Paul, Minnesota," and at the same time delivered to said railroad a memorandum purporting to describe the contents of said barrels, kegs, and half barrels, and asking that the shipment be sent by the Boston & Maine Railroad Company, the West Shore

Railway Company, the West Transit Company, and the C., St. Paul, M. & O., knowing that the transportation of said barrels, kegs, and half barrels, with their contents, over the route requested, would involve transferring or transshipment from one carrier to another, and from a land carrier to a water carrier, or vice versa; that by said memorandum the contents of 12 of the barrels were described as "shoe wax," the contents of 51 of the barrels as "liquid cement," and the contents of the remaining 9 barrels, the 6 kegs, and the 2 half barrels as "Currier's blacking"; that the contents of said barrels, kegs, and half barrels, described as aforesaid, had prior to the delivery to said Boston & Maine Railroad Company been put up and prepared for sale, and had been sold or offered for sale by the defendant, not for remanufacture, and, as the defendant well knew, consisted of illuminating or fuel oils, made from coal or petroleum, which would evaporate a gas under 100° Fahrenheit, or ignite at a temperature of less than 110° Fahrenheit, with which oils the defendant had mixed a very small percentage of other substances, but not so as really or essentially to change the character or properties of said oils; that in so selling or offering for sale illuminating or fuel oils made from coal or petroleum, which would evaporate a gas under 100° Fahrenheit or ignite at a temperature of less than 110° Fahrenheit, the defendant acted in violation of the statutes of the commonwealth of Massachusetts, and became liable for any damage suffered by any person from the explosion or ignition of such oils thus unlawfully sold or kept or offered for sale; that there was nothing on or about said barrels, kegs, or half barrels to indicate the true nature of their contents, and that said Boston & Maine Railroad and all other carriers or persons engaged in the transportation of said barrels, kegs, and half barrels were wholly without any knowledge of the dangerous nature of the contents of the same; that the Boston & Maine Railroad Company, after receiving the aforesaid barrels, kegs, and half barrels, forwarded them, with their said contents, in pursuance of the aforesaid memorandum, by the route requested; that on or about August 17, 1907, while said goods were in the course of transportation along said route, and were at or near Buffalo, New York, and being transferred to the steamship Utica in the ordinary manner of transferring and handling goods of a nondangerous character, those engaged in so transferring being without any knowledge of the dangerous nature of the contents of the said barrels, kegs, and half barrels, one of the said barrels, kegs, or half barrels became broken, and the contents of said barrel, keg, or half barrel escaped into the hold of said steamship Utica; that said contents immediately turned in whole or in part to vapor, and shortly thereafter exploded with great force and became on fire; that said fire spread with great rapidity; that the plaintiff, a corporation duly organized and existing under the laws of the state of Minnesota, was the owner of certain goods, commonly known as "dry goods," properly packed and contained in four wooden boxes or cases then rightfully on board the steamship Utica, and stored therein in a proper place, the said goods having been bought by the plaintiff in New York City and being in process of transportation to it at its place of business in Minneapolis, Minnesota; that said goods were consumed by the fire aforesaid and wholly lost to the plaintiff; that said loss was suffered by the plaintiff from the explosion or ignition of said illuminating or fuel oil unlawfully sold or kept or offered for sale as aforesaid, in violation of the statutes of the commonwealth of Massachusetts, and occurred, further, without the fault, lack of care, or negligent intervention or omission of the plaintiff. All to the great damage of the plaintiff.

Count XI. For that defendant, on or about August 12, 1907, and for a long time prior thereto, was engaged in preparing and putting up for sale in the city of Chelsea and commonwealth of Massachusetts and in selling what said defendant called "shoe wax," "liquid cement," and "Currier's blacking"; that on or about said August 12, 1907, the defendant delivered to the Boston & Maine Railroad Company, a common carrier, at its freight house in said city of Chelsea, for transportation by it, 72 barrels, 2 half barrels, and 6 kegs, consigned by the defendant to the "A. B. B. Company, St. Paul, Minnesota," and at the same time delivered to said railroad a memorandum purporting to describe the contents of said barrels, kegs, and half barrels, and asking that the shipment be sent by the Boston & Maine Railroad Company, the West Shore

Railway Company, the West Transit Company, and the C., St. Paul, M. & O., knowing that the transportation of said barrels, kegs, and half barrels, with their contents, over the route requested, would involve transferring or transshipment from one carrier to another, and from a land carrier to a water carrier, or vice versa; that by said memorandum the contents of 12 of the barrels were described as "shoe wax," the contents of 51 of the barrels as "liquid cement," and the contents of the remaining 9 barrels, the 6 kegs, and the 2 half barrels as "Currier's blacking"; that the contents of said barrels, kegs, and half barrels described as aforesaid, consisted of naphtha, which the defendant had sold or offered for sale under an assumed name; that with said naphtha, when sold or offered for sale, the defendant had mixed a very small percentage of other substances, but not so as really or essentially to change the character or properties of said naphtha; that in so selling or offering for sale naphtha under an assumed name the defendant acted in violation of the statutes of the commonwealth of Massachusetts, and became liable for any damages suffered by any person from the explosion or ignition of such naphtha thus unlawfully sold or kept or offered for sale; that there was nothing on or about said barrels, kegs, or half barrels to indicate the true and dangerous nature of their contents, and that said Boston & Maine Railroad, and all other carriers or persons engaged in the transportation of said barrels, kegs, and half barrels, were wholly without any knowledge of the true nature of the contents of the same; that the Boston & Maine Railroad Company, after receiving the aforesaid barrels, kegs, and half barrels, forwarded them, with their said contents, in pursuance of the aforesaid memorandum, by the route requested; that on or about August 17, 1907, while said goods were in the course of transportation along said route, and were at or near Buffalo, New York, and being transferred to the steamship Utica in the ordinary and proper manner of transferring and handling goods of a nondangerous character, those engaged in so transferring being without any knowledge of the dangerous nature of the contents of the said barrels, kegs, and half barrels, one of the said barrels, kegs, or half barrels became broken, without any negligence on the part of those engaged in transferring or handling the same, or on the part of any other person, and the contents of said barrel, keg, or half barrel escaped into the hold of said steamship Utica; that said contents immediately turned in whole or in part to vapor, and shortly thereafter exploded with great force and became on fire; that said fire spread with great rapidity; that the plaintiff, a corporation duly organized and existing under the laws of the state of Minnesota, was the owner of certain goods, commonly known as "dry goods," properly packed and contained in four wooden boxes or cases then rightfully on board the steamship Utica, and stored therein in a proper place, the said goods having been bought by the plaintiff in New York City and being in process of transportation to it at its place of business in Minneapolis, Minnesota; that said goods were consumed by the fire aforesaid and wholly lost to the plaintiff; that said loss was suffered by the plaintiff from the explosion or ignition of naphtha so sold or offered for sale in violation of the statutes of the commonwealth of Massachusetts, and occurred, further, without the fault, lack of care, or negligent intervention or omission of the plaintiff. All to the great damage of the plaintiff.

Count XII. For that defendant, on or about August 12, 1907, and for a long time prior thereto, was engaged in preparing and putting up for sale in the city of Chelsea and commonwealth of Massachusetts, and in selling what said defendant called "shoe wax," "liquid cement," and "Currier's blacking"; that on or about said August 12, 1907, the defendant delivered to the Boston & Maine Railroad Company, a common carrier, at its freight house in said city of Chelsea, for transportation by it, 72 barrels, 2 half barrels, and 6 kegs, consigned by the defendant to the "A. B. B. Company, St. Paul, Minnesota," and at the same time delivered to said railroad a memorandum purporting to describe the contents of said barrels, kegs, and half barrels, and asking that the shipment be sent by the Boston & Maine Railroad Company, the West Shore Railway Company, the West Transit Company, and the C., St. Paul, M. & O., knowing that the transportation of said barrels, kegs, and half barrels, with their contents, over the route requested, would involve transferring or trans-

shipment from one carrier to another, and from a land carrier to a water carrier, or vice versa; that by said memorandum the contents of 12 of the barrels were described as "shoe wax," the contents of 51 of the barrels as "liquid cement," and the contents of the remaining 9 barrels, the 6 kegs, and the 2 half barrels as "Currier's blacking"; that the contents of said barrels, kegs, and half barrels described as aforesaid consisted of naphtha, which the defendant had sold or offered for sale under an assumed name; that with said naphtha when sold or offered for sale the defendant had mixed a very small percentage of other substances, but not so as really or essentially to change the character or properties of said naphtha; that in so selling or offering for sale naphtha under an assumed name the defendant acted in violation of the statutes of the commonwealth of Massachusetts and became liable for any damages suffered by any person from the explosion or ignition of such naphtha thus unlawfully sold or kept or offered for sale; that there was nothing on or about said barrels, kegs, or half barrels to indicate the true and dangerous nature of their contents, and that said Boston & Maine Railroad, and a'l other carriers or persons engaged in the transportation of said barrels, kegs, and half barrels, were wholly without any knowledge of the true nature of the contents of the same; that the Boston & Maine Railroad Company, after receiving the aforesaid barrels, kegs, and half barrels, forwarded them, with their said contents, in pursuance of the aforesaid memorandum, by the route requested; that on or about August 17, 1907, while said goods were in the course of transportation along said route, and were at or near Buffalo, New York, and being transferred to the steamship Utica in the ordinary manner of transferring and handling goods of a nondangerous character, but without such extra precautions as would have been taken in the case of goods known to be dangerous, those engaged in so transferring being without any knowledge of the dangerous nature of the contents of the said barrels, kegs, and half barrels, one of the said barrels, kegs, or half barrels became broken, and the contents of said barrel, keg, or half barrel escaped into the hold of said steamship Utica; that said contents immediately turned in whole or in part to vapor, and shortly thereafter exploded with great force and became on fire; that said fire spread with great rapidity; that the plaintiff, a corporation duly organized and existing under the laws of the state of Minnesota, was the owner of certain goods, commonly known as "dry goods," properly packed and contained in four wooden boxes or cases then rightfully on board the steamship Utica, and stored therein in a proper place, the said goods having been bought by the plaintiff in New York City and being in process of transportation to it at its place of business in Minneapolis, Minnesota; that said goods were consumed by the fire aforesaid and wholly lost to the plaintiff; that said loss was suffered by the plaintiff from the explosion or ignition of naphtha so sold or offered for sale in violation of the statutes of the commonwealth of Massachusetts, and occurred, further, without the fault, lack of care, or negligent intervention or omission of the plaintiff. All to the great damage of the plaintiff.

Carver, Wardner & Goodwin, for plaintiff.
Whipple, Sears & Ogden, for defendant.

PUTNAM, Circuit Judge. This case was heard on general demurrer. The declaration contains 12 counts, but the demurrer did not relate to the first 4 counts. For all the purposes of the demurrer, counts 5 and 6 are the same. These counts were apparently based on the Revised Statutes of the United States, sections 4475 and 4476 (U. S. Comp. St. 1901, p. 3052). It is properly admitted, however, that inasmuch as these sections impose only a criminal penalty, no civil action lies directly in consequence of any violation thereof. They do not come within that class of statutes which vest a title, and still leave a remedy at common law, although special remedies are given thereby. Therefore, in addition to what now appears in these counts, there must be

a specific allegation of enough to support an action at common law, say for negligence or willful tort.

It was, however, claimed at bar that violations of these provisions of the statutes of the United States, under the circumstances of this case, are evidential facts in an action for negligence or willful tort. Of course, if either negligence or willful tort were alleged, there must be supporting allegations of particulars in reference thereto; and it is possible that acts in violation of the statute cited might be assigned by such particulars. Whether or not, however, such violations would prove material to the cause of action, would involve matters of fact to be determined by the jury under the instructions of the court. It is plain that nothing which can be assigned in that direction in violation of the statute can amount as a matter of law to either negligence or willful tort; and, therefore, these counts are not sufficient, even under a general demurrer.

Next come counts 7 and 8. These counts contain elaborate references to the sections of the Revised Statutes of the United States stated; and it is claimed by the defendant that they fall into the same class with counts 5 and 6. It is true that, on a casual reading, they would seem to be based on those statutory provisions. Nevertheless, the plaintiff claims that they are good at common law. It is true they contain allegations in an alternative form, and allegations which, if based on the sections of the Revised Statutes referred to, would render them multifarious. Also, in view of the position taken at bar that these counts are good at common law, they contain much surplusage. Nevertheless, we find in them allegations of negligence, although not such allegations as are regarded as in the best form according to the rules of pleading at common law, which rules prevail in this district; so that, as multifariousness and surplusage are not defects, unless especially assigned, either at common law or under section 954 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 696), these counts must stand as the record is now made.

The remaining counts are based on the statutes of the state of Massachusetts. Inasmuch as the counts show that the damage which resulted from the facts alleged occurred without the state of Massachusetts, it is claimed by the defendant that in that respect the state statutes have only a local effect. It is true that the declaration should show that the illegal acts out of which the damage resulted were performed within the jurisdiction of the state which enacted the statute prohibiting them. That being shown, inasmuch as the result, wherever occurring, forms the basis of a purely civil remedy, it is governed by the same rules which apply to a remedy at the common law for any injury which may follow within one jurisdiction as the consequence of an illegal act done in another jurisdiction. Therefore this proposition of the defendant cannot prevail.

Defendant also claims as to these counts that the statutes relate only to oils intended to be used for illuminating purposes. We do not so understand them. Although some parts thereof are thus limited, other parts are not. The parts not thus limited are within the purview of these counts. The allegations of these counts are, perhaps, subject to the same objections as to multifariousness and alternative statements

which we have observed with reference to other counts. On the other hand, this is not entirely clear, because the pleader may perhaps well allege a very considerable series of events intervening between the illegal act in Massachusetts and the injurious result in another jurisdiction. For the reasons already stated, however, we have no occasion on a general demurrer to investigate this class of questions, except so far as to satisfy ourselves that there results no such uncertainty as the law of pleading recognizes. Notwithstanding the complicated allegations in these counts, we are compelled to decide, after careful investigation, that we do not find that degree of uncertainty which is available under a general demurrer; so that the result of the whole is that we decide that counts 5 and 6 are insufficient in law, and that the remaining counts will stand the plucking of a demurrer which contains no special assignments of error.

The fifth and sixth counts are declared insufficient in law, the demurrer is overruled as to all other counts, and the defendant has leave to plead over.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes